BARBER *v.* SOUTHERN SERVICE CORPORATION *et al.*

No. 10768.   MARCH 12, 1936.   REHEARING DENIED MARCH 27, 1936.

*Spalding, MacDougald, Sibley & Brock* and *Sumter M. Kelley,* for plaintiffs in error.

*Alston, Alston, Foster & Moise,* contra.

RUSSELL, Chief Justice.   On April 24, 1930, a contract of employment was entered into between the Southern Service Corporation and George G. Barber, the pertinent provisions of which were: "1.   The corporation agrees to employ said George G. Barber for a period of three years, beginning April 24, 1930, and ending April 23, 1933, as general manager of the corporation and of such other corporations as now or hereafter may become subject to its management.   2.   The said George G. Barber agrees to accept such employment for the period specified, and during such period to devote his entire time and attention and his best efforts to the business of the corporation, and not to engage directly or indirectly in any other business."   All the capital stock of the Southern Service Corporation was owned by the Columbia Baking Company, which was also the owner of all the capital stock of eight other corporations engaged in the business of manufacturing and selling bread and cakes.   The Southern Service Corporation was the management corporation which directed and supervised the operations of the eight subsidiary production organizations.   Barber was president of the Columbia Baking Company, Southern Service Corpora-

tion, and all the subsidiary corporations. The contract of employment above set out was guaranteed, as to the Southern Service Corporation, by the Columbia Baking Company, as follows: "Columbia Baking Company, in consideration of the benefits received and to be received by it as the sole stockholder of Southern Service Corporation and of its affiliated companies, by authority of its board of directors does hereby guarantee the complete performance of the foregoing agreement by Southern Service Corporation." Under the contract quoted above, Barber assumed management as general manager of the operations of the Southern Service Corporation and the companies under its control, and so continued until February 20, 1932, when he was informed by the then president of the Columbia Baking Company and its subsidiaries that he was discharged. He filed suit in the municipal court of Atlanta against the Southern Service Corporation and the Columbia Baking Company, seeking to recover on salary due him under this contract. The defendants instituted an equitable action in the superior court of Fulton County, praying that the suit in the municipal court be enjoined, and that they be given verdicts for damages against Barber for his acts of mismanagement under said contract. The judge of the superior court referred the case to an auditor, who after hearing evidence made his report of 82 findings of fact, 15 conclusions of fact, and 6 conclusions of law. Exceptions to this report were overruled, and the judge entered a judgment in accordance with the report of the auditor. Barber excepted, assigning error on the overruling of his exceptions to the auditor's report.

As succinctly stated in the brief of counsel for the plaintiff in error: "The auditor found: (1) That there was no merit in the claim for damages of the defendants in error against the plaintiff in error. (2) That Barber had complied with his obligation to devote his entire time and attention to the business of the Southern Service Corporation and to engage in no other business. (3) That the discharge of Barber was justified." It is unnecessary that the numerous exceptions to the auditor's report be detailed; for, as said in counsel's brief, "The sole issue is as to the wrongful or rightful discharge of Barber. If the discharge was wrongful, the Southern Service Corporation is liable on the contract, and the Columbia Baking Company is liable on its guar-

anty." The Code of 1933, §§ 10-201 to 10-204 inclusive, §§ 10-301 to 10-305 inclusive, and §§ 10-401 to 10-407 inclusive, very clearly states the rules and practice as to the consideration of reports of auditors selected by a judge of the superior court acting as a chancellor in equity. This court can generally rely upon the chancellor to subject the report of the auditor, with the assistance of counsel for both parties in the case, to close and conscientious scrutiny. Nevertheless we have given close investigation and careful consideration to the report of the auditor, and to the exceptions to this report, and find no error which would authorize a · reversal of the judgment of the chancellor in this case. The only real contention by the plaintiff in error is that the discharge of Barber as general manager of the Southern Service Corporation was not authorized.

Since Barber filed no exceptions to any of the auditor's findings of fact, he admitted the correctness of finding No. 24, as follows: "With the exception of Mr. Barber and Mr. Tipton, all of the directors elected at the annual meeting of the stockholders of Columbia Baking Company, in February, 1930, were engaged in lines of business other than baking. The personnel of this board of directors was satisfactory to Mr. Barber, and followed his leadership, without a dissenting vote." He also, by failing to except, admitted the correctness of finding No. 56, as follows: "In October, 1931, the Shaefer Baking Company, one of the subsidiaries of Columbia Baking Company [under Barber's supervision], and operating a baking plant in Savannah, Georgia, owned a certain garage property in the City of Savannah, used for the storage of automobiles, and carried on the books of the company at $22,000. At some time after October 10, 1931, Mr. Frank Morgan, manager of the Shaefer Baking Company, gave an option on this property to one Greenberg for $7500, the option expiring on December 1, 1931. The terms of this option to purchase said property were $2500 cash, and the balance of $5,000 to be payable on terms secured by deed to the property. This option was entered into on the authority and under the direction of Mr. Barber. Evidently the option was exercised, but the transaction was never consummated, and later resulted in litigation between Greenberg and Shaefer Baking Company, in which the former recovered judgment against the latter in

the sum of approximately $8,000. This transaction was not formally passed on or approved by the board of directors of either Shaefer Baking Company or Columbia Baking Company." In like manner Barber admitted the correctness of finding of fact No. 62, as follows: "While no formal corporate objection was interposed to the maintenance of Mr. Barber's New York office at an expense of $150 per month to the corporation, and the employment in said office of a secretary at an expense of $20 per week, informal suggestions were made by at least one officer of the company to Mr. Barber, to the effect that it would be to the best interest of the business if Mr. Barber would move his office to Atlanta, where the general offices of the Columbia Baking Company were located. I find as a matter of fact that the maintenance of the New York office was unnecessary to the conduct of the plaintiff corporation's business; that the conduct of the business suffered as a result of the continued maintenance of the New York office, and the consequent location of Mr. Barber for a substantial portion of his business time at a point distantly removed from the general offices of the plaintiff. I find that if Mr. Barber had closed his New York office and dispensed with the services of a secretary therein, and removed his business location to the general offices of the plaintiff in Atlanta, Georgia, substantial economies would have been effected, and the conduct of the plaintiff's business would have benefited by his closer personal contact with the general offices of the business." It also appears from finding of fact No. 64, unexcepted to, that during his connection with the Southern Service Corporation as general manager, from April 24, 1929, until February 20, 1932, Mr. Barber "wrote letters regarding the business of the plaintiff corporation from his New York office on 172 days," and thus that for 172 days Barber's employer was deprived of the benefits which would have resulted from his "closer personal contact with the general offices of the business."

"When error is assigned upon the refusal of a judge to approve an exception of fact to an auditor's report in an equity case, the burden is upon the plaintiff in error to show, to the satisfaction of the Supreme Court, that the finding of the auditor is unsupported by evidence, the presumption being that the finding is correct; and where it does not distinctly appear that the finding is unsupported, the judgment of the trial judge refusing to approve the exception

of fact will be affirmed." *Fowler* v. *Davis,* 120 *Ga.* 442 (47 S. E. 951). It is our opinion that, in view of the findings of fact of the auditor which we have quoted, it can not be said that the auditor's conclusion that the discharge of the plaintiff in error was authorized is unsupported by evidence; and consequently the judgment over-ruling the exceptions and entering a decree in accordance with the report of the auditor will be affirmed. In equity, the judge upon his own motion may refer any case to an auditor when in his judgment the facts and circumstances of the case require it, but in the hearing before him the auditor generally takes the place of the judge; and the position, in equitable proceedings, should be confined to lawyers of ability, because, by the Code of 1933, § 10-103, "in addition to the matter specially referred, the auditor shall have power to hear demurrers, allow amendments, and pass upon all questions of law and fact. He shall have power to sub-poena and swear witnesses and compel the production of papers; and in cases of contempt by either party, witness, or other persons, upon application to the court making the appointment the judge shall, in term time or vacation, take such proceedings and impose such penalty as the facts authorize or require." Since the law confers such ample powers upon an auditor, this court, in review-ing the proceedings in a case which has been referred to an audi-tor, then passed upon by the chancellor, may reasonably be inclined, if the chancellor approves the auditor's report, to treat the conclu-sion reached in such a case as supported by the judgment of two courts. All the provisions in the Code with respect to auditors are to be strictly construed; for if the report of the auditor is not excepted to, the court frames such a verdict or decree as may be proper. "If exceptions are filed, after the same have been con-sidered and passed upon by the court or jury, or both, as the case may be, the court shall order a verdict or a decree in accordance with the report, and the changes made by court or jury, unless the same shall require a recommitment." § 10-407. The auditor's report may be treated with reference to the exceptions, or the court has power to recommit the whole matter to the same or a different auditor for investigation either in whole or in part. In a case at law exceptions of fact are passed upon by a jury; but in equity cases, whether the exceptions shall be submitted to a jury or not is a matter entirely with the chancellor. These observations

are made merely to call attention to the fact that where it appears from the record, as it does in this case, that the evidence has been meticulously investigated and ascertained, and the law pertinent thereto has been properly applied by a lawyer of unflagging industry, as demonstrated by the more than 500 pages of his report, this court reaches the conclusion, after reading the entire record, that the plaintiff in error, under the rules of equity, has no just cause for complaint.

*Judgment affirmed. All the Justices concur.*

### ON MOTION FOR REHEARING.

RUSSELL, Chief Justice. A careful examination of the motion for rehearing has been made. If it were not for two issues, there might be some merit in the legal contentions made by the plaintiff in error. We refer to the findings of the auditor in regard to maintaining offices in New York City and in spending such a large portion of his time in these offices, and to the loss sustained in the Savannah transaction by reason of Barber's action. With regard to these two matters it is apparent that any claim that the directors or corporate authorities were responsible for the action taken, and for the consequences, can not be sustained as a matter of law, so as to relieve Barber from all possible inference of mismanagement in regard to them. In the state of the record this court can not say that the conclusion of the auditor to the effect that Barber's discharge was authorized should have been set aside by the judge on the exceptions taken. We are therefore of the opinion that the decision by this court affirming the judgment of the trial court was correct, and that the motion for a rehearing should be denied. "Where some of the findings of fact by an auditor are sufficient to support a judgment or decree in favor of one of the parties, and are not themselves subject to exceptions taken, a judgment founded thereon in favor of such party should not be disturbed by this court, notwithstanding other findings of fact and of law may have been subject to exception." *Robinson v. Reese,* 175 *Ga.* 575 (6) (165 S. E. 744). *Rehearing denied.*